UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE GALEGO,
    Plaintiff,


v.                        CIVIL ACTION NO. 22-12243-MPK[1]


CITY OF FALL RIVER,
ALBERT F. DUPERE, ATHANASIOS PAROUSIS,
RAUL CAMARA, MATTHEW REZENDES,
JASON FOURNIER, PAUL FURTADO,
KEVIN LOPES, NICHOLAS SOULE,
BRETT KIMBALL, ANTHONY GOFF,
DAVID SOULIERE, SCOTT BOYER,
FALL RIVER POLICE DEPARTMENT,
    Defendants.


MEMORANDUM AND ORDER
ON DEFENDANTS' MOTIONS TO DISMISS


KELLEY, U.S.M.J.

I. Introduction.

      Lawrence Galego seeks damages for injuries sustained during a violent encounter with Fall

River police officers. Officers responded to plaintiff's apartment building after dispatchers

received what plaintiff implies was a "swatting" call, that is, a fake report of an incident. According

to plaintiff, officers were informed by dispatchers that the call was for an incident on the first floor,

---

[1] The parties have consented to proceeding before a United States Magistrate Judge for all purposes, including trial and entry of final judgment, pursuant to 28 U.S.C. § 636(c). (#49.)

yet they went to the third floor, where they knocked on plaintiff's door. When plaintiff opened the door, one or more officers immediately hit him in the face with a hard object; forced him to the ground; repeatedly struck his body, apparently with a firearm; and held him down, apparently at gunpoint. Officers also searched his apartment. (#1.)

In addition to the City of Fall River ("the City") and Police Chief Alfred Dupere, the complaint names twelve dispatchers and responding officers as defendants.[2] Defendants have filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). Briefing is complete.

For the reasons set forth below, the City's motion (#30) is ALLOWED in part and DENIED in part. Dupere's motion (#23) is ALLOWED. The dispatchers and responding officers' motions (##26, 32) are ALLOWED in part and DENIED in part.

II. Standard of Review.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility. . . ."

---

[2] The complaint also names the Fall River Police Department ("FRPD") as a defendant. (#1 ¶ 4.) A police department is not a proper party separate from the municipality, so the court treats the claims against the FRPD as claims against the City. *See Alves v. City of Gloucester*, #18-cv-10654-MPK, 2019 WL 267462, at *7 (D. Mass. Jan. 18, 2019).

*Id*. (quoting *Twombly*, 550 U.S. at 556-557).

In deciding a Rule 12(b)(6) motion, the court "accept[s] as true the complaint's well-pleaded factual allegations and draw[s] all reasonable inferences in favor of the" plaintiff, but it "do[es] not credit conclusory legal allegations or factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (cleaned up) (citations omitted); *see Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021); *Parker v. Landry*, 935 F.3d 9, 13-14 (1st Cir. 2019); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

III. <u>The Factual Allegations</u>.

The complaint is poorly drafted. For instance, it lists defendants Stacy Aguiar,[3] Anthony Goff, Scott Boyer, and David Souliere as dispatchers in one paragraph, *see* #1 ¶ 19, but adds defendant Kevin Lopes as a dispatcher in another, *see id*. ¶ 27. The complaint describes Lopes in the same terms as the other dispatchers ("an officer and or dispatcher/call taker of the FRPD") and also in different terms than the responding officers ("an officer of the FRPD"), *see id*. ¶¶ 6-17, yet identifies Lopes as a responding officer, *see id*. ¶ 22.[4] A claim of assault and battery is not raised against Lopes, although it is raised against the other responding officers. *Id.* at 6. Aguiar, meanwhile, is identified as a dispatcher multiple times, *see id*. ¶¶ 13, 19, 22, 27, yet the complaint arguably raises a claim of assault and battery against her. *Id*. at ¶ 43.[5] Counsel for Lopes refers to

---

[3] Aguiar has since been voluntarily dismissed without prejudice from this action. (##46-48.)

[4] The other identified responding officers are defendants Raul Camara, Matthew Rezendes, Jason Fournier, Paul Furtado, Anthanosios Parousis, Brett Kimball, and Nicholas Soule. *Id*.

[5] The caption of Count I reads: "Plaintiff v. Parousis, Camara, Rezendes, Fournier, Furtado, Soule, and Kimball." *Id*. at 6. Paragraph 43 reads: "The actions of Parousis, Camara, Rezendes, Fournier, Furtado, Soule, Aguiar, and Kimball committed upon the Plaintiff constituted and [sic] assault and battery upon the Plaintiff." *Id*. ¶ 43.

him as a "public safety" dispatcher, *see* #32 at 1, and notes that he has been identified in the complaint as both a dispatcher and responding officer. (#33 at 2-3 & n.1.) Plaintiff has done nothing to clarify the confusion. Rather, counsel asserts that the assault and battery count has been raised against the dispatchers and responding officers, *see* #36 at 1; *see also* #25 at 1, #34 at 1, when that count has only been raised against the responding officers and perhaps also against Aguiar.[6]

In addition, the complaint refers to an assault and battery "at the police station," *see* #1 ¶ 67; to a duty of care on "applications for criminal complaints," *see id.* ¶ 47; and to plaintiff as "the Defendant," *see id.* ¶ 48. But no allegations suggest that plaintiff was ever brought to the police station or charged criminally. To the contrary, as set forth in the complaint, an officer apologized to plaintiff, admitting that the responding officers had gone to the wrong address, and plaintiff showered, requested an ambulance, and was brought to a hospital. *Id.* ¶¶ 32-33. Defense counsel note the confusion, *see* #24 at 11 n.2, #27 at 13 n.3, #33 at 10; again, plaintiff's counsel has done nothing to clarify.

Further, while the complaint implies that the call leading to the dispatch and response was fake, it does not explicitly say so. The complaint refers to the reported incident as "allegedly" occurring on the first floor, *see* #1 ¶ 27; defines the term "swatting," *see id.* ¶ 30; and asserts that the dispatchers and responding officers knew or should have known that term, *see id.* But the complaint does not set forth any factual allegations regarding the call, so there are no facts from which the court could reasonably infer that the dispatchers and responding officers knew or should have known that the call was fake. For purposes of these Rule 12(b)(6) motions, the court infers

---

[6] Because the assault and battery count has not been raised against him, for purposes of these Rule 12(b)(6) motions, the court groups Lopes with the dispatchers.

that a "swatting" call led to the dispatch and response. The court will not draw any inferences regarding what the dispatchers and responding officers knew or should have known about the call because that would be too speculative.

These facts may be drawn from the non-conclusory, non-speculative allegations in the complaint: On January 21, 2020, dispatchers received a "swatting" call about an incident at 464 Division Street, a multi-floor, multi-unit apartment building, and sent FRPD officers there. The dispatch was for an incident that was "identified multiple times as occurring" on the first floor, in the "front." (#1 ¶¶ 18-20.)

Plaintiff was alone in his apartment on the third floor when, around 1:30 a.m., he heard noises in the hallway and then a knock on his door. *Id.* ¶¶ 18, 21. Plaintiff opened his door and saw several uniformed FRPD officers in the hallway. *Id.* ¶ 22. The complaint states that the responding officers "included" Camara, Rezendes, Fournier, Furtado, Parousis, Kimball, Lopes, and Soule. *Id.* ¶ 23.

One or more of the responding officers immediately hit plaintiff in his face with a hard object, forced him to the ground, and violently struck him in several places on his body with a hard object, believed to be a firearm. *Id.* ¶ 23. Plaintiff felt, seemingly, the barrel of a firearm against his back and head and the weight of one or more of the responding officers forcibly holding him down. *Id.* ¶ 24. Plaintiff began to lose consciousness and was so terrified that he soiled himself. *Id.* ¶ 25.

While plaintiff was restrained, the responding officers searched his apartment. *Id.* ¶ 31. Plaintiff alleges that this was done without probable cause, reasonable suspicion, a warrant, or his consent, and with actual or constructive knowledge that the dispatch was for an incident allegedly occurring on the first floor, not in his third-floor apartment. *Id.* ¶ 26; *see id.* ¶ 31 (responding

officers beat and restrained plaintiff and searched his apartment "after having been informed on at least two occasions that the call was for an incident allegedly occurring on the first floor of the apartment building").

After the search, an officer apologized to plaintiff and explained that the responding officers had gone to the wrong address. *Id*. ¶ 32. Plaintiff showered and then requested an ambulance. He was taken to the hospital and treated for his injuries. *Id*. ¶ 33. Plaintiff alleges that he sustained unspecified physical injuries and has suffered economic losses. He alleges that he continues to suffer from unspecified physical injury, as well as emotional distress. *Id*. ¶¶ 34, 38-39.

"In a transparent effort to conceal their unlawful activity, the FRPD authored at least one false report." *Id*. ¶ 35. No police reports are attached to the complaint (or the parties' papers), and the complaint does not describe the report(s) at issue further.

Plaintiff timely presented his claims pursuant to Mass. Gen. Laws ch. 258, § 4; defendants did not respond. (#1 ¶ 41.)

IV. <u>The Counts</u>.

Count I alleges assault and battery against Parousis, Camara, Rezendes, Fournier, Furtado, Soule, and Kimball. *Id*. ¶¶ 42-44. As noted, these are the defendants listed in the caption of Count I, *see* #1 at 6; in the body, Aguiar is added to the list, *see id*. ¶ 43.

Count II alleges negligence against all defendants. *Id*. ¶¶ 45-51.

Although the caption of Count III lists all defendants, *see id*. at 8, in the body, only the City, Dupere, and Kimball are alleged to have negligently trained and supervised individual defendants, *see id*. ¶¶ 52-54; *see also id.* ¶ 37.

Counts IV alleges negligent infliction of emotional distress against all defendants. *Id*. ¶¶ 55-59.

Count V alleges intentional infliction of emotional distress against all defendants. *Id*. ¶¶ 60-64.

Count VI states a claim under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and 11I, against all defendants. (#1 ¶¶ 65-68.)

Count VII is a claim under 42 U.S.C. § 1983 against all defendants, alleging, *inter alia*, violations of plaintiff's Fourth Amendment and substantive due process rights through the use of excessive force; unlawful seizure; unlawful search; and the preparation of a false police report. (#1 ¶¶ 69-79.) Plaintiff alleges that the actions of the dispatchers and responding officers "were done in accordance with a custom or policy" of the City and Dupere. *Id*. ¶ 73.

V. <u>Discussion</u>.

    A. <u>Civil Rights Claims</u>.

        1. <u>42 U.S.C. § 1983</u>.

            a. <u>The City</u>.

                i. <u>Law</u>.

42 U.S.C. § 1983 is the vehicle for raising violations of federal constitutional rights by persons acting under color of state law. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). Under § 1983, a municipality cannot be liable under a *respondeat superior* theory; instead, the municipality itself must have caused the constitutional violation at issue. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691-692 (1978); *see Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016); *see also Aaron v. City of Lowell*, #20-cv-11604-ADB, 2022 WL 2953033, at *2 (D. Mass. July 26, 2022); *McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 353 (D. Mass. 2010). Thus, "it is only

when the governmental employees' execution of a government's policy or custom inflicts the injury and is the moving force behind the constitutional violation that a municipality can be liable." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005) (cleaned up) (quoting *Monell*, 436 U.S. at 694).

Out of concern that municipal liability might collapse into de facto *respondeat superior* liability, the United States Supreme Court has set a "very high" bar for § 1983 municipal liability claims. *Young*, 404 F.3d at 26. There are three components: (1) the municipal action at issue must constitute a policy or custom attributable to the municipality; (2) the municipal policy or custom must have caused the constitutional violation; and (3) the municipality have the requisite level of fault, which is "deliberate indifference." *Id*.

A municipality can be liable under § 1983 based on a failure to train or supervise police officers who then violate a plaintiff's constitutional rights if the failure to train or supervise amounted to deliberate indifference and the deficiency in the training program or supervision was closely related to the constitutional violation. *Young*, 404 F.3d at 26 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989)); *see DiRico v. City of Quincy*, 404 F.3d 464, 468-469 & n.2 (1st Cir. 2005). "Deliberate indifference" is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v Brown*, 520 U.S. 397, 410 (1997)); *see Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019).

For purposes of a § 1983 municipal liability claim based on a failure to train or supervise police officers, a plaintiff must typically show "a pattern of similar constitutional violations." *Gray*, 917 F.3d at 14 (quoting *Connick*, 563 U.S. at 62 (citing *Bryan Cty*., 520 U.S. at 409)); *see McElroy*, 741 F. Supp. 2d at 354; *see also Matalon v. City of Boston*, #13-cv-10001-GAO, 2014

WL 108407, at *5 (D. Mass. Jan. 8, 2014); *Sonia v. Town of Brookline*, 914 F. Supp. 2d 36, 45-46

(D. Mass. 2012). Ordinarily, a "single incident" of police misconduct cannot support a § 1983

municipal liability claim, "without other evidence." *Bordanaro v. McLeod*, 871 F.2d 1151, 1161

n.8 (1st Cir. 1989).

A municipality can be liable absent a pattern of similar constitutional violations in rare

cases, but the constitutional violation at issue must be a "highly predictable consequence of a

failure to equip law enforcement officers with specific tools to handle recurring situations." *Young*,

404 F.3d at 28 (quoting *Bryan Cnty.*, 520 U.S. at 409); *see Canton*, 489 U.S. at 390 n.10; *accord*

*Hill v. Walsh*, 884 F.3d 16, 24 (1st Cir. 2018) (pattern "ordinarily necessary" "unless the need for

more or different training is so obvious and the inadequacy is so likely to result in the violation of

constitutional rights") (cleaned up) (citations omitted). *Contrast Young*, 404 F.3d at 28-29 (genuine

issue of material fact as to single-incident liability in case involving always armed/always on-duty

policy) *with*, *e.g.*, *Sonia*, 914 F. Supp. 2d at 46-47 (no single-incident liability in case involving

always on-duty policy that permitted, but did not require, off-duty intervention).

ii. <u>Analysis</u>.

The court agrees with the City, *see* #31 at 5-8, that the complaint does not state a viable §

1983 municipal liability claim. The complaint only mentions the events of January 21, 2020. *See*

#1. Plaintiff explicitly asks the court to infer the existence of a municipal policy or custom of

failure to train and supervise police officers from those events alone, as well as, presumably, to

infer causation and deliberate indifference.[7]

---

[7] *See* #35 at 4 ("the mere allegations that a number of police officers would believe that it is
acceptable practice to raid a third-floor apartment, while the call identified the first-floor
apartment, and then beat the compliant occupant, in and of itself, is sufficient evidence of the
existence of a municipal policy or custom – particularly under the circumstances as alleged where

Plaintiff cites the familiar case of *Bordanaro*, 871 F.2d 1151. (#35 at 4.) But *Bordanaro* does not support drawing these inferences. There, the fact that the incident involved joint action of the entire police department night watch was additional support for the existence of the facially unconstitutional practice of breaking down doors without warrants when arresting felons. 871 F.2d at 1156. Other evidence of the practice was presented, including testimony that an officer had been present for numerous breakdowns and that the city provided a sledgehammer to facilitate the practice. *Id*. at 1156.

The "jury was not asked to infer the existence of [the policy or custom of failing to train and supervise police officers] based solely on the incident. . . ." *Id*. at 1159. Other evidence of the policy or custom was presented, including testimony that, prior to the incident, an officer who advocated for better training told the police chief and mayor that something bad would happen if more training was not provided. The police chief and mayor had received oral and written requests for better training prior to the incident. They discussed the matter and decided not to provide it, ignoring subsequent requests. *Id*. at 1160-1161. In contrast, here, no evidence other than this incident of the existence of a municipal policy or custom of failure to train and supervise police officers has been presented. *See Mahan v. Plymouth Cty. House of Corr.*, 64 F.3d 14, 16-17 (1st Cir. 1995) (*Bordanaro* held that single incident of police misconduct "*in and of itself*" is insufficient) (emphasis in original).

Plaintiff does not argue that this case falls within the narrow range of circumstances in which single-incident liability may be imposed. *See* #35 at 3-4. Nor would the court have been inclined to accept that argument. From the meager, mostly conclusory factual allegations in the

---

dispatchers informed the officers of the correct address, yet the officers ignored that information and proceeded to the Plaintiff's third floor apartment and assaulted him").

complaint, the court cannot find that what happened to plaintiff was "so obviously the consequence of a systematic lack of training, as opposed to the decisions of individual officers." *Hill*, 884 F.3d at 18, 23-24 (cleaned up) (affirming grant of summary judgment for city in case involving alleged failure to train police to read warrants where officers entered parents' home pursuant to warrant authorizing civil commitment of son, notwithstanding that warrant stated that son was currently in a hospital); *see Aaron*, 2022 WL 2953033, at *4 (at motion to dismiss stage, refusing to extend single-incident liability to case involving failure to train on police report preparation) (citing *Cosenza v. City of Worcester, Mass.*, #4:18-cv-10936-TSH, 2021 WL 5138493, at *9 (D. Mass. Nov. 4, 2021) (at summary judgment stage, refusing to extend single-incident liability to case involving failure to train on photo arrays), *appeal filed*, ##23-1123, 23-1165)). Court VII is dismissed as to the City.

### b. Dupere.[8]

#### i. Law.

A supervisor, like a municipality, cannot be liable under § 1983 on a *respondeat superior* theory. *Justiniano*, 986 F.3d at 20; *see Parker*, 935 F.3d at 14. For a § 1983 supervisory liability claim, a plaintiff must show that one of the supervisor's subordinates violated his constitutional rights, as well as an affirmative link between the violation and some action or inaction on the part of the supervisor. *Parker*, 935 F.3d at 14; *see Justiniano*, 986 F.3d at 20. "Affirmative link" "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d

---

[8] There are no factual allegations in the complaint suggesting that Dupere, the police chief, directly participated in the events of January 21, 2020. *See* #1. Thus, the court treats the claims against Dupere as supervisory liability claims.

1367, 1380 (1st Cir. 1995)); *see Justiniano*, 986 F.3d at 20 (link must be "solid"); *Parker*, 935

F.3d at 15 (deliberate indifference must lead "in a straight line" to violation).

Culpable action or inaction on the part of the supervisor may consist of "supervisory

encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate

indifference." *Parker*, 935 F.3d at 14 (cleaned up) (citations omitted); *see Justiniano*, 986 F.3d at

20.

> Facts showing no more than a supervisor's mere negligence vis-à-vis his
> subordinate's misconduct are not enough to make out a claim of supervisory
> liability. . . . At a minimum, the plaintiff must allege facts showing that the
> supervisor's conduct sank to the level of deliberate indifference. . . .

*Parker*, 935 F.3d at 14 (citation omitted).

To make out deliberate indifference, a plaintiff must show (1) a grave risk of harm; (2) the

supervisor's actual or constructive knowledge of the risk; and (3) his failure to take easily available

measures to address the risk. *Justiniano*, 986 F.3d at 20; *see Parker*, 935 F.3d at 15. Notice is key:

> When – as in this case – there is no allegation of actual notice, the primary means
> by which a plaintiff can show that [the supervisor] had knowledge of facts from
> which [he] could infer a substantial risk of serious harm is to allege (plausibly) that
> [the supervisor was] aware of previous and relevant misconduct by the subordinate
> in question. . . . In order for a subordinate's earlier conduct to put [the supervisor]
> on notice of a substantial risk of serious harm, there must be some fact or facts that,
> whether viewed singly or in combination, plausibly signal the likelihood that
> particular misconduct may occur. . . . An isolated incident that concerns arguably
> relevant misconduct, without more, typically will not be enough to ground a
> reasonable inference that a substantial risk of serious harm was in prospect. . . .

*Parker*, 935 F.3d at 16 (citations omitted).

Absent a showing that the supervisor was aware of previous, relevant misconduct by the

particular subordinate, in "rare circumstances," a plaintiff may make a plausible showing of

deliberate indifference through "a known history of widespread abuse sufficient to alert a

supervisor to ongoing violations." *Parker*, 935 F.3d at 17 (citation omitted); *see Justiniano*, 986 F.3d at 21.

Like municipal liability, supervisory liability might also be appropriate in the "narrow range of circumstances" in which the constitutional violation at issue is "a highly predictable consequence of a failure to equip law enforcement with specific tools to handle recurring situations." *Justiniano*, 986 F.3d at 21 (quoting *Young*, 404 F.3d at 28).

ii. <u>Analysis</u>.

The complaint does not state a plausible § 1983 supervisory liability claim against Dupere. The court is not inclined to apply *Young*. The complaint does not even hint at a known history of widespread abuse.

The complaint does not include factual allegations from which the court might reasonably infer that Dupere was or should have been aware of previous, relevant misconduct by the particular dispatchers and responding officers. No earlier misconduct is alleged. The First Circuit has found more fulsome allegations insufficient. *See*, *e.g.*, *Parker*, 935 F.3d at 16-17 (affirming denial of motion to amend supervisory liability claim as futile although proposed amended complaint alleged that correctional officer accused of sexually assaulting plaintiff was suspended during prior investigation of other officers alleged to have sexually assaulted other inmates; that sheriff told newspaper about his intention to hold press conference about indictments of correctional officers; and that corrections department official referred to officer in question as "the Teflon kid" since "everyone knew he was up to something, but no one could pin anything on him"); *Saldivar*, 818 F.3d at 18-19 (affirming dismissal of supervisory liability claim against different FRPD chief; although complaint included allegations regarding prior disciplinary violations by FRPD officer alleged to have sexually assaulted plaintiff, violations did not indicate propensity for violence).

13

There are no factual allegations in the complaint from which the court might reasonably infer that Dupere had notice of deficiencies in training programs or supervision and failed to take easily available measures to address them. Nor can the court infer that Dupere's putative failure to take such measures caused the dispatchers and responding officers to violate plaintiff's constitutional rights.

Opposing dismissal of a different count, plaintiff alludes to "the increased level of police misconduct and excessive force incidents that have been widely publicized throughout this country." (#25 at 4.) There are no factual allegations in the complaint regarding the "widely publicized" incidents. Nor are there allegations from which to infer that additions or changes to training programs or supervision in response to the "widely publicized" incidents would have prevented the responding officers from going to the wrong address; beating plaintiff and seizing him; searching his apartment; and preparing a false police report. *See Justiniano*, 986 F.3d at 22-23 (affirming dismissal of supervisory liability claim against Massachusetts State Police superintendent alleged to have failed to train on interactions with mentally ill individuals; highlighting absence of allegations regarding history of use of excessive force against mentally ill individuals, by troopers generally or the trooper who fatally shot mentally-ill decedent specifically, as well as absence of allegations regarding training programs in other jurisdictions; declining to apply *Young* in absence of allegations regarding widespread, prominent trend of constitutional violations).

Citing no case law, plaintiff argues that a complaint describing events that are conscience-shocking and alleging a failure to train and supervise states a plausible § 1983 supervisory liability claim. (#25 at 5.) That argument is not supported by the case law. *See*, *e.g.*, *Saldivar*, 818 F.3d at 16, 20, 21, 23 (affirming dismissal as to FRPD chief alleged to have been final decisionmaker as

to training, supervision, and retention notwithstanding "very disturbing," "shocking" allegations of "horrific" misconduct by FRPD officer). Count VII is dismissed as to Dupere.

c. <u>The dispatchers and responding officers</u>.

The complaint divides the remaining individual defendants into two groups – dispatchers and responding officers – and then fails to specify who did what, including which of the one or more responding officers beat and restrained plaintiff. (#1 ¶¶ 19, 22-24, 26-27, 31-32, 35.) The dispatchers and responding officers argue that the civil rights (and intentional tort) claims should be dismissed based on the form of the complaint.[9]

The confusion, including with respect to Lopes' role, gives the court pause. But the court recently addressed a "shotgun" complaint argument in *Perrot v. Kelly*, #18-cv-10147-DPW, 2023 WL 2939277, at \*15-17 (D. Mass. Feb. 15, 2023), *report and recommendation adopted*, 2023 WL 2607763 (D. Mass. Mar. 23, 2023). As there, the court rejects the argument here, although the responding officers certainly are free to argue for summary judgment on similar grounds. The court acknowledges that group pleading is not ideal, but there is no heightened pleading requirement in civil rights actions, and a number of other courts have concluded that, at the motion to dismiss stage, it is sufficient for a civil rights plaintiff to identify defendants who may be liable. *Id.* at \*16 & n.17 (collecting authorities).[10] The responding officers were present at the scene and they have adequate notice that plaintiff is alleging constitutional violations based on what happened there,[11]

---

[9] *See*, as to Camara: #27 at 6-10, #42 at 2-6; *see*, as to the dispatchers and other responding officers: #33 at 4-7, 11-13, #44 at 1-4, 6-7.

[10] The court rejects plaintiff's argument that the burden shifts to the dispatchers and responding officers to prove that they are not liable. *See* #34 at 3, #36 at 3.

[11] The § 1983 claim is based on what happened at the scene, not what led to the dispatch and response to the scene. *See* #1 ¶¶ 69-79. Although the claim is also based on the preparation of an allegedly false police report(s), *see id.* ¶ 77, it is settled in this circuit that the mere filing of a false

that is, the use of excessive force and unlawful seizure and search, regardless whether the complaint specifically alleges, for instance, that Responding Officer X repeatedly hit plaintiff with a gun while Responding Officer Y held him down forcibly and Responding Officer Z looked on, offering words of encouragement or saying nothing at all. *Contrast Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 594-595 (1st Cir. 2011) (remanding to allow plaintiff to add "John Doe" defendant; complaint plausibly alleged that plaintiff was fired, via letter several weeks after new governor took office, based on political affiliations but not that new governor, chief of staff, and administrator of governor's mansion "participated – *either as perpetrators or accomplices* – in the decision") (emphasis added).

The dispatchers are not alleged to have been present at the scene. They argue that the complaint fails plausibly to allege the § 1983 failure to intervene claim that plaintiff more clearly articulates in response to the "shotgun" complaint argument.[12] (#44 at 3-4.) The court agrees. It is settled in this circuit that an officer who is present at the scene and sees the use of excessive force by another officer can be liable under § 1983, if the officer could realistically have prevented its use and had enough time to do so. *Davis v. Rennie*, 264 F.3d 86, 98, 102 (1st Cir. 2001) (citing *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (per curiam));

---

police report, without more, does not create a right of action in damages under § 1983. *Landrigan v. City of Warwick*, 638 F.2d 736, 744-745 (1st Cir. 1980) ("we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution or laws. . .The focus. . .ordinarily should be on the consequences, if any, not on the mere existence of the report") (citations omitted).

[12] *See* #36 at 4 ("As to the individual actors in the role of dispatcher, the conduct attributable to them is that they were aware the call was for a dispatch on the first floor and that they failed to prevent the police officer actors from attacking the Plaintiff at his third floor apartment – knowing that the police were at the wrong apartment, and that with that knowledge, they failed to call off the attack or report the incident or supervisory police personnel so that the attack could be stopped").

*see Calvi v. Knox Cty.*, 470 F.3d 422, 428 n.3 (1st Cir. 2006); *see also Walker v. Jackson*, 56 F. Supp. 3d 89, 96 (D. Mass. 2014).[13] Plaintiff's assertions that the dispatchers knew that the responding officers went to the wrong address, *see* #36 at 4, 9, are not supported by any factual allegations in the complaint. There are no allegations from which to infer that the dispatchers were aware or should have been aware that the responding officers would, or did, go to the wrong address and would, or did, use allegedly excessive force, at a time when the dispatchers could have prevented the responding officers from going to the wrong apartment and using such force. An inference that the dispatchers and responding officers were communicating during the violent encounter is speculative.[14] Setting aside the fact that the dispatchers were not present at the scene, if the dispatchers did not timely know or have reason to know that the responding officers were

---

[13] There is debate in this circuit as to whether an officer has a duty to intervene in a constitutional violation other than the use of excessive force. *Walker v. Jackson*, 952 F. Supp. 2d 343, 352 (D. Mass. 2013) ("The court has not found any support for the proposition that allowing a fellow officer to enter a residence and participating in the subsequent search constitutes a claim for failure to intervene"); *cf. Cosenza v. City of Worcester, Mass.*, 355 F. Supp. 3d 81, 100-101 (D. Mass. 2019) (officers entitled to qualified immunity on claim of failure to intervene in due process violation). Courts that have recognized a broader duty to intervene, including in unlawful searches, has required plausible allegations or proof that the officer, among other things, knew that the search was happening and had reason to know it was unlawful. *See Pryor v. Corrigan*, #17-cv-1968, 2021 WL 1192581, *24 (N.D. Ill. Mar. 30, 2021) (at the summary judgment stage: "there is no evidence to support a finding that Rios was both aware of the search *and* had an opportunity to intervene") (emphasis in original), *appeal filed*, #23-1463; *see also Cook v. City of Fremont*, #20-cv-02704-JCS, 2020 WL 6318712, *6 (N.D. Cal. Oct. 28, 2020) (complaint did not allege that officers were aware that search was conducted without warrant or consent) (citing *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029-1030 (9th Cir. 2002), *aff'd sub. nom. Groh v. Ramirez*, 540 U.S. 551 (2004)).

[14] Although the complaint alleges that after the search, an officer admitted that the responding officers went to the wrong address, *see* #1 ¶ 32, it is speculative to conclude that the officer came to this realization from communications with the dispatchers at a time when the dispatchers could realistically have prevented the use of allegedly excessive force. It is equally possible that when the search did not reveal whatever the responding officers were looking for, they radioed back to the dispatchers who pointed out the officers' error, or their own.

engaging in misconduct, then the dispatchers could not have prevented that misconduct. Therefore, as to the dispatchers, the complaint fails to state a plausible § 1983 failure to intervene claim. Count VII is dismissed as to the dispatchers.

The responding officers also argue that the failure to intervene claim fails. (#44 at 4.) The court disagrees, given the factual allegations in the complaint that plaintiff opened his door and saw "several" uniformed FRPD officers in the hallway and was "immediately" struck in the face. (#1 ¶¶ 22-23.) The violent encounter lasted long enough for plaintiff to begin to lose consciousness and soil himself. A search was conducted while he was restrained. *Id*. ¶¶ 25, 31. Those allegations are sufficient at the motion to dismiss stage.

2. <u>MCRA</u>.

a. <u>The City</u>.

The MCRA permits civil action

[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth. . . .

Mass. Gen. Laws. ch. 12, § 11H (by state Attorney General); Mass. Gen. Laws. ch. 12, § 11I (by private parties). Unlike under 42 U.S.C. § 1983, municipalities are not "persons" under the MCRA. *Kelley v. LaForce*, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (citing *Howcroft v. City of Peabody*, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001)). Count VI is dismissed as to the City.

b. <u>Dupere; dispatchers; responding officers</u>.

"Threats, intimidation or coercion" is "the 'essential element'" under the MCRA. *Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 100 (D. Mass. 2001) (quoting *Layne v. Superintendent of Mass. Correctional Inst.*, 546 N.E.2d 166, 168 (Mass. 1989)); *see Planned*

*Parenthood League of Mass., Inc., v. Blake*, 631 N.E.2d 985, 990 (Mass. 1994) (defining "threats," "intimidation," and "coercion"). Dupere is not alleged to have directly participated in the events of January 21, 2020; rather, he allegedly failed to train and supervise the dispatchers and responding officers. Courts have held that MCRA claims may not be based on such conduct, which does not involve "threats, intimidation or coercion." *See Fernandes v. Bouley*, #20-cv-11612-GAO, 2021 WL 4691602, at *14 (D. Mass. Aug. 2, 2021) (collecting authorities), *report and recommendation adopted*, 2021 WL 4452311 (D. Mass. Sept. 29, 2021).

At any rate, plaintiff is claiming a "direct" violation of his constitutional rights, which likewise does not involve "threats, intimidation or coercion." *Longval v. Comm'r of Corr.*, 535 N.E.2d 588, 593 (Mass. 1989); *see Planned Parenthood*, 631 N.E.2d at 989. The MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates or coerces the plaintiff to (2) cause him to give up something that he has the constitutional right to do. *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). Here, however, plaintiff is essentially claiming that the responding officers used excessive force and unlawfully seized him and searched his apartment to cause him to give up his right to be free from excessive force and unlawful seizures and searches, which "torture[s]" the MCRA "well beyond its plain meaning." *Id*. at 128-129; *see Patino v. City of Revere*, #13-cv-11114-FDS, 2014 WL 202760, at *11 (D. Mass. Jan. 16, 2014) ("Allegations of excessive force and unlawful arrest, without more, have consistently been held not to constitute violations of the MCRA") (citations omitted); *see also Gallagher v. South Shore Hosp., Inc.,* 197 N.E.3d 885, 904 (Mass. App. Ct. 2022) ("entry into the home, standing alone, cannot constitute a violation of the MCRA").

Plaintiff attempts to rebrand the claim as based on the covenant of "quiet enjoyment." (#25 at 4, #34 at 6, #36 at 7.) But he is still essentially claiming that the responding officers unlawfully

entered his home to cause him to give up his right to be free from unlawful entries into his home. Anyway, plaintiff has not cited any case law to support his new theory. Count VI is dismissed as to the individual defendants.

    B. <u>Common Law Claims</u>.

        1. <u>Negligence</u>.

           a. <u>Dupere; dispatchers; responding officers</u>.

Under the Massachusetts Tort Claims Act ("MTCA"), the individual officers cannot be held personally liable for injury caused by their negligent conduct within the scope of their employment. Mass. Gen. Laws ch. 258, § 2, unambiguously states that ". . .no such public employee . . . shall be liable for any injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment. . . ." *Id*.; Mass. Gen. Laws ch. 258, § 1 (defining "public employer" to include cities and towns and "public employee" to include full or part-time, temporary or permanent, and paid or unpaid employees of any public employer); *see Breault v. Chairman of Bd. of Fire Com'rs of Springfield*, 513 N.E.2d 1277, 1283 (Mass. 1987); *see also Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003); *Henriquez v. City of Lawrence*, #14-cv-14710-IT, 2015 WL 3913449, at *5 (D. Mass. June 25, 2015). Plaintiff does not argue that the individual defendants were acting outside the scope of their employment and in fact appears to acknowledge that they were acting within the scope.[15] *See, e.g.*, *Horan v. Cabral*, 277 F. Supp. 3d 229, 235-236 (D. Mass. 2017) (dismissing negligence claims in absence of factual allegations in complaint suggesting that sheriff was acting outside scope of her employment).

---

[15] *See* #25 at 3 ("The plaintiff has alleged alternative theories against Dupere. One theory, that he acted negligently *in the performance of his duties*, provides a basis for liability against Dupere") (emphasis added); *see also* #34 at 5 (Camara); #36 at 5 (dispatchers and other responding officers).

Plaintiff nevertheless opposes dismissal of the negligence claims as to the individual defendants. Although it is not clear, plaintiff may be arguing that he can pursue negligence claims against the individual defendants in their official capacities because official capacity claims are treated as claims against the City, which can be held vicariously liable for injury caused by the individual defendants' negligent conduct within the scope of their employment.[16] (#25 at 2-3; #34 at 4-6; #36 at 4-6) (citing, *inter alia*, *Villanueva v. Franklin Cty. Sheriff's Office*, 849 F. Supp. 2d 186, 191 (D. Mass. 2012) (dismissing individual, but not official, capacity negligence claim) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (official-capacity claims are "in all respects other than name, to be treated as a suit against the entity"))).[17]

The individual defendants argue that the official capacity negligence claims against them are redundant of the vicarious negligence claims against the City.[18] Plaintiff does not explain how

---

[16] In addition to absolving public employees from personal liability for their negligent conduct within the scope of their employment, Mass. Gen. Laws ch. 258, § 2, provides:

> Public employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances. . . .

*Id*.

[17] Otherwise, plaintiff seems to be saying that dismissal is not appropriate because he is pursuing individual capacity claims against the individual defendants based on alternative theories of negligent and intentional conduct. (#25 at 2-3; #34 at 4-6; #36 at 4-6.) Plaintiff may pursue alternative theories, *see* Fed. R. Civ. P. 8(d)(2)-(3), but the fact that he is pursuing individual capacity claims against the individual defendants based on intentional conduct does not change the fact that individual capacity claims against the individual defendants based on negligent conduct are barred by the MTCA's plain language.

[18] *See*, as to Dupere, #24 at 5-6 (all claims); *see*, as to Camara, #27 at 5-6 (all claims); *see*, as to the dispatchers and other responding officers, #32 at 2 (incorporating Dupere and Camara's arguments), #33 at 13 (42 U.S.C. § 1983 claim).

the analysis of the former claims differs from the analysis of the latter claims. The court therefore dismisses the official capacity negligence claims against the individual defendants as redundant of the vicarious negligence claims against the City. *See Doe v. Fournier*, 851 F. Supp. 2d 207, 214-215 (D. Mass. 2012) (dismissing negligence claims against individual school committee members, who were only named in their official capacities, as redundant of negligence claims against school committee itself: "Plaintiff's claims against the school committee members are superfluous, as Plaintiff may recover any damages she is entitled to through her claims against the municipal defendants. . . . The inclusion of numerous individual defendants creates clutter that may confuse a jury, and dismissing the claims against these defendants would in no way prejudice Plaintiff") (citations omitted).[19]

To the extent that they have been raised against Dupere, the dispatchers, and the responding officers in their individual capacities, Counts II, III, and IV are dismissed under Mass. Gen. Laws ch. 258, § 2. To the extent that they have been raised against Dupere, the dispatchers, and the responding officers in their official capacities, Counts II, III, and IV are dismissed as redundant.

b. The City.

Generally, to state a claim for negligence under Massachusetts law, a plaintiff must plausibly allege that (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused the damage. *Saldivar*, 818 F.3d at 20-21 (citing *Jupin v. Kask*, 849 N.E. 2d 829, 834-835 (Mass. 2006)).

---

[19] *Villanueva* and *Doe* were both decided by Judge Ponsor, with *Doe* decided on February 22, 2012, and *Villanueva* decided about a month later, on March 27, 2012. In *Villanueva*, Judge Ponsor noted that the county and county officials had not argued for dismissal of the negligence count on other grounds. 849 F. Supp. 2d at 191.

i. Negligent training and supervision.

Under Massachusetts law, "[e]mployers are responsible for exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs." *Helfman v. Northeastern Univ.*, 149 N.E.3d 758, 775 (Mass. 2020) (quoting *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1048 (Mass. 2014)). For a claim that an employer negligently trained an employee, "a plaintiff must show that 'the employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment." *Id.* (alteration in original) (quoting *Foster v. The Loft, Inc.*, 526 N.E.2d 1309, 1311 (Mass. App. Ct. 1988)); *cf. Patino*, 2014 WL 202760, at *10 ("Massachusetts cases have only allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort. . . ") (quoting *Kennedy v. Town of Billerica*, 617 F.3d 520, 533 (1st Cir. 2010)). This notice requirement has also been applied to claims that employers negligently supervised employees. *Doe v. Stonehill College, Inc.*, 55 F.4th 302, 338 (1st Cir. 2022) (quoting *Helfman*, 149 N.E.3d at 775); *see id.* (affirming dismissal of negligent supervision claim; plaintiff failed to allege with specificity how coordinator would have become aware of investigators' alleged incompetence); *see also Houle v. LaFlamme*, #20-cv-11524-IT, 2021 WL 3742459, at *7 (D. Mass. Aug. 24, 2021) (dismissing negligent training and supervision claim in case involving police response to plaintiff's home upon being provided license plate number by alleged victim of robbery, where response led to arrest of plaintiff's son and allegedly unlawful search of home: "Other than conclusory allegations, such as that 'Methuen has been aware of the violations of constitutional rights. . .for years,' . . .Houle does not allege that Methuen knew or should have known of any problems with the individual officers, nor has she alleged that Methuen failed to

take corrective action upon becoming aware of such issues") (citation to amended complaint omitted).

The City argues that there are no factual allegations in the complaint to suggest that supervisors became aware or should have become aware of problems with training, or that supervisors were put on notice that the dispatchers and responding officers were unfit, yet failed to take further action. (#31 at 10 & n.4.) Plaintiff essentially argues that training and supervision deficiencies are obvious from the events of January 21, 2020, alone. (#35 at 5.) Plaintiff has not cited any case holding that factual allegations like those here, which fall far short for purposes of the § 1983 municipal and supervisory liability claims, are nevertheless sufficient for purposes of the negligent training and supervision claim. *See Weiss v. Lavallee*, #02-cv-40177-FDS, 2005 WL 8176485, at *22 (D. Mass. Oct. 7, 2005) ("the negligence required for recovery under the MTCA for alleged inadequate police training is similar, if not identical, to the deliberate indifference required under § 1983 in municipal liability claims") (citing *Parker v. Town of Swansea*, 270 F. Supp. 2d 92, 101-102 (D. Mass. 2003)). Count III is dismissed.[20, 21]

---

[20] The court does not reach the City's argument that the negligent training and supervision count, like the negligence and negligent infliction of emotional distress counts, is barred by Mass. Gen. Laws ch. 258, § 10(j), the original cause exemption, addressed *infra*. (#31 at 11.) The issue is subject to some debate, and the court does not need to weigh in. *See LaPierre v. City of Lawrence*, #11-cv-12039-RWZ, 2013 WL 1829120, at *3-4 (D. Mass. May 1, 2013) (disagreeing with cases in this district holding that § 10(j) bars claims that public employers failed to train or supervise public employees who then committed intentional torts in part because plain language of § 10(j) suggests that public employers should be liable for harm caused by "person[s] acting on [their] behalf"); *see also Doe v. Holly*, #22-1232, 2023 WL 4542949, at *3 n.4 (1st Cir. July 14, 2023) (unreported) (in case involving third-party harm, acknowledging, but declining to address, split).

[21] So much of the negligent training and supervision and negligence counts that seek to hold the City vicariously liable for the individual defendants' putative failure to "properly exercis[e] control over police officers under their supervision," *see* #1 ¶ 47(i), is dismissed because (1) as discussed, plaintiff has not plausibly alleged that Dupere had notice; and (2) there are no factual allegations in the complaint from which the court might reasonably infer that the dispatchers and responding officers had supervisory authority. Except Dupere, the individual defendants are described as

ii. <u>Negligence</u>.

In seeking dismissal of all negligence counts, the City raises three arguments. First, in a single sentence, the City argues that plaintiff is alleging intentional conduct by the responding officers when they entered his apartment and beat him, presumably in support of an argument that the counts are barred by Mass. Gen. Laws ch. 258, § 10(c), the intentional tort exemption.[22] (#31 at 10); *see id.* at 9. Also in a single sentence, the City argues that plaintiff does not plausibly allege that negligent conduct caused him damages. *Id.* at 10.

Finally, the City argues that all negligence counts are barred by Mass. Gen. Laws ch. 258, § 10(j), the original cause exemption.[23] (#31 at 11.)[24]

For ease of analysis, the court divides into subclaims the alleged conduct which supports the negligence (and negligent infliction of emotional distress) claim against the City. As set forth

---

"officer[s] of the FRPD" or "officer[s] and or dispatcher[s]/call taker[s] of the FRPD." (#1 ¶¶ 6-17.) The court may not speculate about their responsibilities.

[22] That section exempts the City from liability for any claims

> arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations. . . .

Mass. Gen. Laws ch. 258, § 10(c).

[23] That section exempts the City from liability for any claims

> based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation. . .which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass. Gen. Laws ch. 258, § 10(j).

[24] In seeking dismissal of the negligence claims, the City has not invoked any exemptions other than intentional tort, § 10(c), and the original cause, § 10(j), exemptions. *See* #31 at 10-11.

in the complaint, the City and individual defendants breached duties of care by (1) failing to send the responding officers to the correct address; (2) failing to inform the responding officers that they should not go to the wrong address; (3) going to the wrong address; (4) entering plaintiff's residence without justification; (5) beating him; (6) arresting or detaining him without justification; (7) creating an allegedly false police report(s) as a cover-up; (8) failing to ensure that police reports are truthful; and (9) failing to investigate plaintiff's claims, apparently after presentment. (#1 ¶¶ 28-29, 41, 46-50.)

The seventh and eighth subclaims clearly are not actionable. In alleging the creation of an allegedly false police report(s) as a cover-up, plaintiff is alleging intentional conduct, barred by Mass. Gen. Laws ch. 258, § 10(c). *Cf. Williams v. City of Boston*, #10-cv-10131-PBS, 2012 WL 5829124, *1, 13 (D. Mass. Sept. 21, 2012) (adopting recommendation that summary judgment be granted for city on negligence claim based on fabrication of evidence). Further, to the extent that plaintiff is claiming negligent failure to train police on the preparation of truthful reports or negligent approval of the allegedly false police report(s), there are no factual allegations in the complaint from which the court might reasonably infer that supervisory officials who were not at the scene (i.e., Dupere) had notice of problems with training or that the report(s) at issue was false. There are also no allegations suggesting that supervisory officials who were present at the scene (if any) had a role in police report training or approval. Although the allegedly false police report(s) itself might have shed some light, the report(s) is not attached to the complaint.

The City does not specifically address the ninth subclaim. The court therefore does not dismiss the negligence count (or negligent infliction of emotional distress count) insofar as it is based on a putative post-presentment failure to investigate. The City is free to develop an argument at a later stage.

As to the fourth, fifth, and sixth subclaims, assault, battery, false imprisonment, and false arrest are each intentional torts expressly barred by § 10(c). *See Patino*, 2014 WL 202760, at *10 (complaint does not state plausible negligence claim by alleging excessive force and false arrest). The Massachusetts Supreme Judicial Court has, however, recognized that some police conduct during an arrest could result in a finding of negligence. *Gutierrez v. Mass. Bay Transp. Auth*., 772 N.E.2d 552, 559 (Mass. 2002) (jury "could have found some form of negligence on either party's version of events," since plaintiff claimed that officer broke her arm by grabbing and pulling it and officer claimed that he broke her arm by accidentally falling on her as she resisted arrest). At least two judges in this district have declined to dismiss negligence counts against municipalities to the extent that the plaintiffs' claims were based on physical interactions with arresting officers. *Firmin v. City of Boston*, #19-cv-12158-ADB, 2021 WL 352376, at *5-6 (D. Mass. Feb. 2, 2021) (declining to dismiss negligence claim based on, e.g., officers forcing plaintiff to ground and putting weight on him: "it is too early to determine whether those physical interactions were tortious and, if so, whether they were negligent, reckless, or intentional") (adopting *Cecchinato v. Town of Sheffield*, #19-cv-30076-KAR, 2021 WL 24580, at *3 (D. Mass. Jan. 4, 2021) (plaintiff can plead alternative theories but cannot recover on both)). The court therefore will not dismiss the negligence count (or the negligent infliction of emotional distress count) under § 10(c), to the extent that plaintiff's claims are based on physical interactions with the responding officers.

When the fourth, fifth, and sixth subclaims are read in conjunction with the first and second, as well as plaintiff's papers, it seems that plaintiff is claiming either an errant dispatch of the "swatting" call or an errant response to an accurate dispatch. *Contrast* #35 at 4, 5 (prior to encounter, dispatchers informed responding officers of correct address and officers "ignored" them) *with* #36 at 6 (dispatchers may have failed to make correct address "sufficiently clear" to

responding officers). The City's § 10(c) argument is not directed at these subclaims, so the court does not dismiss them.

Nor is the court persuaded by the City's § 10(j) argument. The harmful situation was "originally caused" by the dispatchers or responding officers, "person[s] acting on [the City's] behalf." Mass. Gen. Laws ch. 258, § 10(j); *see, e.g.*, *Dudley v. Mass. State Police*, 78 N.E.3d 136, 139-140 (Mass. App. Ct. 2017) (§ 10(j) did not bar negligence claim against Massachusetts State Police where trooper's releasing K-9 to capture fleeing suspect caused injury to plaintiff-bystander); *Parks v. Town of Leicester*, #10-cv-30120-FDS, 2011 WL 864823, at *6 (D. Mass. Mar. 9, 2011) (§ 10(j) did not bar negligence claim against town where mistake in identifying plaintiff as assailant named by victim was made during investigation); *Serrell v. Franklin Cty.*, 713 N.E.2d 389, 392 (Mass. App. Ct. 1999) (§ 10(j) did not bar negligence claim against county where correctional officers' subduing inmate in visitor area caused injury to plaintiff-bystander).

### iii. <u>Negligent infliction of emotional distress</u>.

To state a claim for negligent infliction of emotional distress, a plaintiff must plausibly allege (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomology; and (5) that a reasonable person would have suffered emotional distress under the circumstances. *Doe v. Trustees of Boston College*, 892 F.3d 67, 95 (1st Cir. 2018) (quoting *Payton v. Abbott Labs*, 437 N.E.2d 171, 181 (Mass. 1982)).

The City argues that plaintiff has not plausibly alleged physical harm manifested by objective symptomology. (#31 at 10-11.) The court rejects this argument, notwithstanding plaintiff's failure to respond. *See* #35 at 5. When considered in conjunction with the violent nature of the encounter, the allegations that plaintiff began to lose consciousness and was so terrified that he soiled himself, *see* #1 ¶ 25; was severely injured and traumatized, *id.* ¶ 33; and continues to

suffer physical and emotional distress, *id*. ¶ 34, are sufficient at the motion to dismiss stage. *Cf. Sullivan v. Boston Gas Co*., 605 N.E.2d 805, 810-811 (Mass. 1993) (at summary judgment stage, plaintiffs presented sufficient objective evidence of physical manifestations of mental distress, e.g. headaches, muscle tenderness, problems concentrating and reading, sleeplessness, gastrointestinal distress, and nightmares; nature of incident, i.e. explosion of home, corroborated genuineness of claim).

### 2. Intentional torts.

#### a. The City.[25]

The intentional infliction of emotional distress count, V, must be dismissed as to the City, which is exempt from liability for intentional torts, including "intentional mental distress." Mass. Gen. Laws ch. 258, § 10(c); *see Sullivan v. Town of Walpole*, #20-cv-10484-GAO, 2021 WL 3174371, at *1 (D. Mass. June 21, 2021).

#### b. Dupere.[26]

To state a claim for intentional infliction of emotional distress, a plaintiff must plausibly allege that (1) the defendant intended, knew, or should have known that his conduct would cause emotional distress; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Penate v. Sullivan*, 73 F.4th 10, 23 (1st Cir. 2023) (quoting *Polay v. McMahan*, 10 N.E.3d 1122, 1128 (Mass. 2014)); *see Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis v. Howard Johnson Co*., 355 N.E.2d 315, 318-319 (Mass. 1976)); *see also Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D. Mass. 2014); *Henriquez*,

---

[25] The complaint only raises the claim of intentional infliction of emotional distress against the City, not the claim of assault and battery. *See* #1 at 6, 9.

[26] The complaint only raises the claim of intentional infliction of emotional distress against Dupere, not the claim of assault and battery. *See* #1 at 6, 9.

2015 WL 3913449, at *5. The Massachusetts Supreme Judicial Court has set the bar "very high" for intentional infliction of emotional distress claims. *Penate*, 73 F.4th at 23 (quoting *Doyle*, 103 F.3d at 195); *see Agis*, 355 N.E. 2d at 318-319. Conduct must have been "targeted" at the plaintiff. *Diaz v. Devlin*, 229 F. Supp. 3d 101, 113 (D. Mass. 2017) (quoting *Rua*, 52 F. Supp. 3d at 100). Moreover, conduct is "extreme and outrageous" only if it "goes beyond all possible bounds of decency and is regarded as atrocious, and utterly intolerable in a civilized society." *Penate*, 73 F.4th at 23 (cleaned up) (quoting *Polay*, 10 N.E.3d at 1128); *see*, *e.g.*, *id.* (officers' entry into home believed to contain armed and violent suspect to execute search warrant, even without knocking and with firearms drawn, was not extreme and outrageous conduct).

Plaintiff does not allege that Dupere was present on January 21, 2020, or that he had any role in the encounter or putative cover-up. Judges in this district have dismissed intentional infliction of emotional distress claims in these circumstances. *See*, *e.g.*, *Diaz*, 229 F. Supp. 3d at 113 (no allegation that detective was present or acted intentionally); *Henriquez*, 2015 WL 3913449, at *5 (no allegation that police chief was present or knew plaintiff needed medical care); *cf. Rua*, 52 F. Supp. 3d at 100 & n.11 (in entering summary judgment, noting undisputed contention that, prior to suit, sheriff had no knowledge of plaintiff).

Plaintiff makes two arguments in opposition to dismissal of the intentional infliction of emotional distress count as to Dupere: (1) the failure to train is sufficient if the alleged events are conscience-shocking and (2) public policy requires that the very high bar be lowered given the increase of police misconduct incidents nationwide. (#25 at 4.) Plaintiff does not any cite case law for either argument. The first is clearly refuted by the case law above. The second has been made in the wrong forum; this court cannot alter Massachusetts common law. Count V is dismissed as to Dupere.

c. <u>The dispatchers</u>.[27]

The court already found, for purposes of the § 1983 failure to intervene claim, that plaintiff has not plausibly alleged the dispatchers knew or should have known that the responding officers went to the wrong address or used excessive force. *See* Part A.1.c. Given the scienter requirement, this finding also defeats the intentional infliction of emotional distress claim. Count V is dismissed as to the dispatchers.

d. <u>The responding officers</u>.

The responding officers argue that the intentional infliction of emotional distress count and the assault and battery count, I, must be dismissed because the complaint fails to specify who did what. (#33 at 7, 8-9.) The court already rejected the "shotgun" complaint argument. *See* Part A.1.c.

V. <u>Conclusion</u>.

The complaint fails to state any plausible claims as to Dupere, who is dismissed from this action. The complaint also fails to state any plausible claims as to the dispatchers, Goff, Souliere, Boyer, and Lopes, who are dismissed from this action.[28]

Count VII (42 U.S.C. § 1983) is dismissed as to the City but may proceed against the responding officers, Camara, Rezendes, Fournier, Furtado, Parousis, Kimball, and Soule, in accordance with the discussion above. Count VI (MCRA) is dismissed. Count III (negligent training and supervision) is dismissed. Count II (negligence) and Count IV (negligent infliction of emotional distress) are dismissed as to the responding officers but may proceed against the City in

---

[27] The complaint only raises the claim of intentional infliction of emotional distress against the dispatchers, not the claim of assault and battery. *See* #1 at 6, 9.

[28] Given the confusion concerning his role, if Lopes was in fact a responding officer and not merely a dispatcher, then plaintiff may file a motion to amend the complaint, **within 21 days** of this memorandum and order.

accordance with the discussion above. Count V (intentional infliction of emotional distress) is dismissed as to the City. That count and Count I (assault and battery) may proceed against the responding officers.

Stated another way, the negligence count, II, and the negligent infliction of emotional distress count, III, survive as to the City only, while the assault and battery count, I; the intentional infliction of emotional distress count, V; and the 42 U.S.C. § 1983 count, VII, survive as to the responding officers only. In all other respects, the Rule 12(b)(6) motions are granted.

/s/ M. PAGE KELLEY

November 20, 2023

M. Page Kelley
United States Magistrate Judge